[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
This is an appeal by the plaintiff, B rant Anderson, from the action of the defendant, Zoning Board of Appeals of the Town of Lebanon, in granting certain variances to the defendant, Robert F. DiBella.
For reasons hereinafter stated, the appeal is dismissed.
Plaintiff has appealed under the provisions of C.G.S. § 8-8(a)(b) which provides that any person aggrieved by any decision of a board may take an appeal to the Superior Court. To establish the aggrievement required by statute, so as to be entitled to appeal a zoning board's decision, a party must allege facts which, if proven, would constitute aggrievement as a matter of law and prove the truth of those factual allegations. Bakelaar v. West Haven, 193 Conn. 59, 65 (1984); Jolly,Inc. v. Zoning Board of Appeals, 237 Conn. 184 (1996). In this case, aggrievement has been denied by the defendants.
Appeal of a decision by a zoning agency such as the zoning board of appeals here exist only under the statutory authority. Section 8-8(a) permits appeal only by one aggrieved by the contested decision. Walls v.Planning and Zoning Commission, 176 Conn. 475, 477 (1979). Pleading and CT Page 16093 proof of aggrievement are prerequisite to a trial court's jurisdiction.Fletcher v. Planning and Zoning Commission, 158 Conn. 497, 501 (1969). Once an issue of subject matter jurisdiction is raised, the court must dispose of this legal question as a threshold matter. Concerned Citizensv. Sterling, 204 Conn. 551, 556-57 (1987). The plaintiff has the burden of proof to establish that he is aggrieved and has standing to prosecute this appeal. Whitney Theater Co. v. Zoning Board of Appeals, 285, 287 (1983).
An aggrieved person is defined by C.G.S. § 8-8(a)(1) as "a person aggrieved by the decision by a board." The statute includes, as aggrieved persons, "any person owning land that abuts or is within a radius of 100 feet of any portion of the land involved in the decision of the board." A person may derive standing to appeal under the statute solely upon his status as an abutting landowner or one owning land within 100 feet of the subject property. This type of agreement is referred to as statutory aggrievement. Nick v. Planning and Zoning Commission, 6 Conn. App. 110,112 (1986).
Another type of aggrievement is usually referred to as classical aggrievement. To be found classically aggrieved a person must prove that he has a specific, personal and legal interest in the subject matter of the decision as distinguished.from the general interest, such is the concern of all members of the community as a whole. In addition, to fit under the definition of classical aggrievement, it must be successfully established that the specific, personal and legal interest has been injuriously affected by the decision. Pierce v. Zoning Board of Appeals,7 Conn. App. 632, 636 (1981). Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest had been adversely affected. Pomazi v. ConservationCommission, 220 Conn. 476, 483 (1991).
In his complaint, plaintiff has alleged in paragraph 5 subparagraphs a. and b. that he is both statutorily aggrieved and classically aggrieved.
 I With respect to plaintiff's claim of statutory aggrievement, all of the evidence leads to the conclusion that plaintiff owns real estate known as 170 Deepwood Drive in the Town of Lebanon. The property consists of a seasonal cottage on a .16 acre lot with water frontage on Amston Lake. The property which was the subject of the variances is owned by defendant, DiBella, and is an island, .08 acres in area, within the waters of Amston Lake. It was stipulated and agreed that the island is 200 feet from the perimeter of plaintiff's property as it lies along the waters of the lake. CT Page 16094
From this, it could be concluded that plaintiff has not established statutory aggrievement since his property does not abut or lie within 100 feet of the island as required by C.G.S. § 8-8(a). In his brief, plaintiff has relied on cases such as Antenucci v. Hartford Roman CatholicDiocesan Corp., 142 Conn. 349, 355 (1955) in which it was held that an owner of land abutting upon a public highway is presumed to own the fee of the land under the highway.
There was no evidence here, however, that plaintiff claimed title to any subaqueous land or title to any portion of the bed of Amston Lake based upon his littoral ownership. The only evidence on the subject was that by deed dated June 4, 1993, title to all the land under the waters of Amston Lake was conveyed to an entity entitled Amston Lake Hebron Tax District. It must be concluded then that since plaintiff has not established ownership of land abutting or within 100 feet of the subject property, he has not established statutory aggrievement.
 II 
Plaintiff has also alleged that he is classically aggrieved. For a better understanding of this claim, an examination of the basic facts underlying the situation is necessary.
By deed dated August 21, 1981, defendant, Robert F. DiBella, acquired title to two islands. Both surrounded by the waters of Amston Lake. One island is described as being approximately 10 feet by 20 feet located approximately 250 feet southerly of lot 15 as shown on a layout of lots at the lake. The second island is located southwest of lots 13 and 14 on such maps. The island which is the subject of this controversy has been identified as lot 156 on the tax assessor's map.
The quitclaim deed by which DiBella acquired title to the islands contains the following restriction:
 Said premises are subject to any and all provisions of any ordinances, zoning, subdivision or other municipal, state or governmental regulations or private and public laws and to such state of facts as an accurate survey may disclose. It is the intent of the grantor herein to advise the grantee herein that the herein property being conveyed cannot be used for building purposes and although the grantor is not restricting the use of the herein property, the grantee is advised that any building on herein premises is subject to grantee complying with Town of Lebanon and State of Connecticut building, zoning and CT Page 16095 health requirements for installation of septic tanks and wells, and construction. Grantee has advised grantor that he is purchasing property for fishing and boating rights.
In 1993, petitioner was considering purchasing property at Amston Lake. He was interested in lakefront property where he could go to relax. Plaintiff testified that before purchasing he checked the restrictions in DiBella's deed. He stated that he also inquired of an unidentified person as the Lebanon Town Hall who informed him that the subject island could not be built upon. From this information, plaintiff concluded that it would not be possible to build on the island. He then purchased the property at 170 Deepwood Drive.
It is noted, that the restrictions in DiBella's deed do not prohibit construction on the island but advise that all construction must be subject to state and town laws and restrictions.
In September, 1998, because of his advancing age, Mr. DiBella wanted a more stable place to sit on his island. He contacted the then zoning enforcement officer about constructing a 12x12 foot deck on the island. The zoning enforcement officer informed him that he could build the deck and that no permit would be required. Mr. DiBella then proceeded to build the deck.
In the spring of 1999, a complaint was filed with the zoning authorities to the effect that the deck constructed on Mr. DiBella's island was in violation of the zoning regulations. A new zoning enforcement officer correctly determined that the deck was a "structure" as defined in § 2.2 of the Zoning Regulations. The officer further concluded that the deck could only be built in compliance with the applicable sections of the regulations. Because of the small size of the island, however, it would be impossible to build the deck in compliance with these regulations. On August 19, 1999, after favorable action by the Inland Wetlands and the Planning and Zoning Commissions, defendant, DiBella, applied to the Zoning Board of Appeals for numerous variances in an effort to legitimatize the deck already constructed. A public hearing was held on the application on October 21, 1999. On the same date, the Zoning Board of Appeals granted the variances "subject to no further expansion, alteration or inclosing of the platform. Only permitted to maintain the platform."
As a consequence of the granting of the variance, this appeal was instituted by plaintiff.
 a. CT Page 16096
Before a finding of classical aggrievement can be made, a plaintiff must establish both of the elements required by law. First, he must prove that he has a specific, personal and legal interest in the subject matter of the decision as distinguished from the general interest such as is the concern of all members in the community as a whole. Pierce v. ZoningBoard of Appeals, supra, 7 Conn. App. 636. Defendants claim that plaintiff has not demonstrated the required specific personal and legal interest in the subject matter. The argue that the island is visible to all lots with a view of the lake as well as passers by who view the lake and that plaintiff's situation is no different from these members of the general public. The situation here presents a very difficult question. Does anyone who occupies a hill or high ground had a legally protected interest in what is permitted on lower ground merely because it lies within his field of view? Without answering his question, it must be found, however, that under the specific circumstances of this case, involving lake front property and the proximity of plaintiff's property to the island, that plaintiff does have the specific personal and legal interest required by law.
Plaintiff's interest in the granting of the variance is certainly greater than a general interest which might be the concern of all members of the community as a whole.
 b.
In addition to establishing a specific, personal and legal interest in the subject matter as above described, plaintiff must also prove that this interest has been injuriously affected by the decision by the Zoning Board of Appeals appealed from. Id. Paragraph 5.b of the Complaint contained the following allegations setting forth how plaintiff claims that his interests have been adversely affected.
 Brandt Anderson, as owner of 170 Deepwood Drive has a specific, personal and legal interest in the subject matter of the ZBA's decision and that interest has been specifically and injuriously affected by the granting of the Application in that Mr. Anderson will suffer a loss of value to his property or otherwise damage due to the increase traffic, noise, congestion, litter and damage to the aesthetics (i.e. view) or otherwise.
In support of these allegations, plaintiff offered his own testimony as well as the testimony of a real estate appraiser. From their testimony and the appraisal report admitted into evidence it has been established CT Page 16097 that plaintiff has a 672 square foot seasonal cottage with direct frontage on Amston Lake. The property enjoys a 180 degree view of the lake and the two islands are in direct view from the property. The real estate appraiser testified that the property suffered from adverse external depreciation as a result of the deck on the island. According to the appraiser, the external depreciation reduced the value of plaintiff property by an estimated $10,000.00. Plaintiff also testified that in his opinion the deck reduced the value of his property.
The appraisal report, under their heading "external depreciation" stated that since the deck was built people would swim to the island and jump or dive off the structure into shallow water adversely affecting public safety and this happened day and night.
There was also testimony that plastic potted plants were placed on the deck including a dried potted Arborvitae tree with window boxes and fake vines and a wooden bird. There was also testimony that on a Monday, toilet paper was observed in the area of the deck. Plaintiff and the appraiser were cross-examined about these activities as they related to the deck and the variance. After consideration of all of this testimony, it must be concluded that the existence of the deck authorized by the variance was not central to these activities which might diminish plaintiff's pristine view of the lake. People could swim to the island and leap off the rocks into dangerous shallow water day and night whether there was a deck or not. The placement of the potted plants and other items even the toilet paper on the island were not dependent on the variance. All of these activities could have occurred whether there was a deck on the island or not. It cannot be found that the existence of the deck caused these activities which it is alleged diminished the value of plaintiff's property.
The appraisal report also stated that inaction by the zoning authorities failure to correct Mr. DiBella's obvious zoning violation in construction of the deck is a factor diminishing the bundle of rights especially the right to private enjoyment, that were purchased by the plaintiff and this non-action renders any further zoning activity suspect. The record, however, indicates that shortly after the violation was pointed out DiBella was notified by the zoning enforcement officer that he was in violation of the zoning regulations. This was followed by a letter explaining the situation to him on April 30, 1999. In response, DiBella obtained the necessary permit from the In land Wetlands Commission and submitted necessary papers to the planning and Zoning Commission. He successfully applied to the Zoning Board of Appeals for the variances which are the subject of this appeal all as authorized by the regulations. The appraiser's conclusion that no action had been taken by the zoning authorities to enforce the regulations does not reflect the CT Page 16098 true facts of the case.
The appraisal report stated as a factor causing the external depreciation of plaintiff's property was that a plastic shed had been placed on the island. This does not appear to be connected with the variance but it is irrelevant since the evidence indicates that the shed had been removed.
It was alleged and plaintiff testified that the deck on the island had caused increased traffic since people would slow down to look at the island with the deck. He did not explain how or whether the island could be observed from the highway or give any details as to when or why this may have occurred. There was nothing to indicate that the, barely visible deck, would attract otherwise disinterested motorist to the area. It cannot be found then that the granting of the variance caused any increased traffic as alleged.
Plaintiff also testified that the deck authorized by the variance was an eye sore. It was alleged that it damaged the esthetics i.e. the view. This of course was a subjective evaluation not shared by all. In her letter of April 30, 1999 to Mr. DiBella, the land use enforcement officer stated that "the landscaping you have done to date has greatly enhanced the appearance of the deck and I encourage you to continue pending the outcome of the permitting process." of course it cannot be found that plaintiff wished to imply that all decks were eye sores since that there was testimony indicating that most of the properties around the lake had decks.
Photographs in evidence showed that the island is mostly ledge with considerable vegetation including some tall trees. The photographs indicate that the deck is barely visible from plaintiff's property because of the surrounding vegetation. This certainly would be the case since plaintiff would be making most use of his seasonal cottage when the vegetation would be at its height.
It must be concluded that plaintiff has not proven that the deck itself caused damage to the aesthetics or the view of the lake from his property. The use of the island might be a factor which would be of concern to plaintiff but as has been noted, the uses complained of are not dependent on the variance or the existence of the deck.
The court is aware of the rule that aggrievement is established if there is a possibility, as distinguished from as certainty that a legally protected interest has been adversely affected by the action of the Zoning Board of Appeals. Pomazi v. Conservation Commission, supra, 220 Conn. 483. However, mere generalizations and fears do not establish aggrievement. CT Page 16099Fletcher v. Planning and Zoning Commission, supra, 158 Conn. 478.
Considering all of the evidence, it must be concluded that there has been no credible showing that plaintiff's legal interests have been injuriously affected by the granting of the variance. It must then be found that plaintiff has failed to prove that he is an aggrieved person and has standing to prosecute this appeal.
Accordingly, the appeal is dismissed.
Joseph J. Purtill, Judge Trial Referee