## JANICE POMAZI v. CONSERVATION COMMISSION OF THE TOWN OF REDDING ET AL.
### (14306)

PETERS, C. J., SHEA, GLASS, COVELLO and BORDEN, Js.

Argued September 25—decision released December 3, 1991

*Nancy Burton,* for the appellant (plaintiff).

*Edwin C. Pearson* filed a brief for the appellee (named defendant).

*Helen L. McGonigle,* for the appellees (defendant Luciano Angeloni et al.).

*Richard A. O'Connor,* with whom, on the brief, was *Melinda Monson,* for the appellees (defendant Gary R. Michael et al.).

BORDEN, J. The dispositive issue of this appeal is whether the plaintiff, Janice Pomazi, established classical aggrievement to appeal from the action of the named defendant, the Redding conservation commission, in failing to revoke the inland wetlands and watercourses license of the defendants Gary R. Michael and Dennis N. Michael. The plaintiff appealed to the trial court from that action,[1] naming as defendants the conservation commission, the Michaels, and Luciano and Debra Angeloni,[2] who are owners of a portion of the property covered by the license at issue. The defendants moved to dismiss the plaintiff's appeal, claiming that the plaintiff was neither statutorily nor classically aggrieved.[3] The court granted the defendants' motions and rendered judgment dismissing the appeal.

---

[1] In a second count of her complaint, the plaintiff also requested declaratory and injunctive relief. The trial court dismissed that count for: (1) failure to exhaust administrative remedies; (2) failure to give proper notice to interested parties; and (3) improper joinder. The plaintiff has not challenged that action of the trial court in this appeal.

[2] The commissioner of the department of environmental protection became a party to the trial court proceedings pursuant to General Statutes § 22a-43, but has not participated in this appeal. We refer herein to the conservation commission, the Michaels and the Angelonis as the defendants.

[3] The Angelonis also claimed that the appeal should be dismissed as to them for defective process. The trial court found it unnecessary to reach that issue. Since the Angelonis have failed to brief that issue as an alternative ground to support the decision of the trial court; see Practice Book

The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023. The plaintiff claims that the trial court improperly dismissed her appeal because she established: (1) statutory aggrievement pursuant to General Statutes § 22a-43 (a);[4] (2) statutory standing to raise environmental issues pursuant to General Statutes § 22a-19 (a);[5] and (3) classical aggrievement under § 22a-43 (a) as a "person aggrieved" by the agency

§ 4065; we consider it abandoned. *State* v. *Walzer,* 208 Conn. 420, 423 n.2, 545 A.2d 559 (1988); *Czarnecki* v. *Plastics Liquidating Co.,* 179 Conn. 261, 262 n.1, 425 A.2d 1289 (1979).

[4] General Statutes § 22a-43 (a) provides: "The commissioner or any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner, district or municipality or any person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any regulation, order, decision or action made pursuant to said sections may appeal to the superior court in accordance with the provisions of section 4-183, except venue shall be in the judicial district where the land affected is located, and if located in more than one judicial district to the court in any such judicial district. Such appeal shall be made returnable to said court in the same manner as that prescribed for civil actions brought to said court. Notice of such appeal shall be served upon the inland wetlands agency and the commissioner. The commissioner may appear as a party to any action brought by any other person within thirty days from the date such appeal is returned to the court. The appeal shall state the reasons upon which it is predicated and shall not stay proceedings on the regulation, order, decision or action, but the court may on application and after notice grant a restraining order. Such appeal shall have precedence in the order of trial."

The plaintiff claimed statutory aggrievement as an owner of land within ninety feet of the watercourse involved in the agency decision.

[5] General Statutes § 22a-19 (a) provides: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the attorney general, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

action. See footnote 4, supra. Because we conclude that the plaintiff established classical aggrievement, we reverse the judgment of the trial court and find it unnecessary to consider her claims of statutory aggrievement.

The relevant facts are undisputed.[6] The conservation commission is the municipal inland wetlands and water-courses agency for the town of Redding. In 1987, the Michaels received subdivision approval from the Redding planning commission for an eleven lot subdivision known as "Huntington Estates." In conjunction with their application for subdivision approval, the Michaels also applied to the conservation commission for a license to conduct certain regulated activities on the subdivision, which contains wetlands and a stream. The Michaels represented to the conservation commission that all of the proposed subdivision lots, including lot 5, would be put to residential use. At the time, lot 5 was already devoted to residential use. In response to a letter from a body of technical advisers to the town regarding future development of lot 5, Gary R. Michael informed the planning commission on September 28, 1987, of the "existing and planned uses" of lot 5,[7] and that he and Dennis N. Michael "have no intention of extending the existing uses for the property." In their application to the conservation commission, the Michaels proposed no change in the use of lot 5 and no regulated activities thereon.

---

[6] For the purposes of the motions to dismiss only, in lieu of an evidentiary hearing the defendants expressly conceded all of the factual allegations of the plaintiff's complaint. Thus, the parties and the trial court treated the issue of aggrievement solely as a question of law: whether the plaintiff had pleaded sufficient facts that, taken as true, established aggrievement as a matter of law. We, therefore, consider the appeal accordingly.

[7] The existing uses described by Michael were a residence, an office area, an apartment located above the office area, stables with a capacity of "up to ten horses," and barns used for storage.

On October 30, 1987, the conservation commission issued a license to the Michaels to conduct certain regulated activities on the subdivision. The license permitted, at specific locations on the subdivision map, a number of activities such as discharge of storm water runoff, development of drainage systems and storm water detention facilities, installation of wells and septic systems, and construction of a residence and driveway. The license did not specify any regulated activities to be permitted on lot 5. The only specific reference in the license to lot 5 was the special condition that a certain declaration of restrictive covenants prohibiting the lot's subdivision or resubdivision be made part of the license. One of the general conditions of the license was that "[t]he Commission is to be notified in writing of any changes in the permitted activity as soon as such changes are anticipated. The applicant is advised that significant change requires Commission approval." Another of the general conditions was that the license "shall expire one year from the date of issuance, except on such terms as it may be renewed by the Commission on written application to it prior to expiration."[8]

Nine days after the issuance of the license, on November 9, 1987, the Michaels entered into a contract to sell lot 5 to Luciano Angeloni, pursuant to which the Michaels agreed to cooperate with Angeloni's effort to obtain a special permit to use lot 5 as a horse riding academy. The Michaels did not inform the conservation commission of this contract. After subdivision approval by the planning commission and the issuance of the wetlands license by the conservation commission, the Michaels conveyed lot 5 to the Angelonis, who thereafter secured from the Redding zoning commis-

---

[8] This condition tracks § 5.12.b of the town's inland wetlands and watercourses regulations: "Licenses shall expire one year from the date of issuance, except on such terms as they may be renewed by the Commission on written application to the Commission prior to expiration."

sion a special permit to operate a horse riding academy on lot 5. That permit contemplated fifty horses on the site.[9]

On or about October 30, 1988, the Michaels' license was renewed by the conservation commission. On November 22, 1989, the conservation commission received a letter from Gary R. Michael, dated November 15, 1989, requesting further renewal of the license. On November 21, 1989, the conservation commission renewed the license, and published notice of that action on November 30, 1989. In response, on December 11, 1989, the plaintiff requested the conservation commission to revoke the license. The conservation commission considered the plaintiff's request at its meeting on December 12, 1989. The plaintiff attended that meeting and filed with the conservation commission a verified notice of intervention pursuant to General Statutes § 22a-19 (a); see footnote 5, supra; claiming environmental harm resulting from the horse riding academy on lot 5. The conservation commission did not revoke the license.

The plaintiff appealed to the trial court, which granted the defendants' motions to dismiss for lack of aggrievement. This appeal followed.

In her appeal to the trial court, the plaintiff alleged that the development of the horse riding academy involves regulated activities, including construction of storm water runoff and drainage facilities, roof drains and other water diversions, and alterations of drainage patterns, that require licensing by the conservation commission. She also alleged that the riding academy will have an impact on the wetlands, watercourses and groundwater resources of the other lots in the subdivision and of property outside the subdivi-

[9] That special permit is the subject of the companion appeal. See *Lauer* v. *Zoning Commission*, 220 Conn. 455, 600 A.2d 310 (1991).

sion. The plaintiff alleged that the commission acted illegally by, inter alia, renewing an expired license, failing to review whether the conditions of the license had been complied with prior to its renewal, failing to require notification by the Michaels of a substantial change pertaining to lot 5, and failing to regulate activities of the riding academy.

The plaintiff's specific factual allegations of aggrievement, which, as noted above, the defendants conceded for purposes of the motions to dismiss; see footnote 6, supra; are as follows. The plaintiff and her husband own and reside with their family on land located in the vicinity of the Michaels' subdivision. Their land is traversed by a stream and wetland system that flows through and issues from the subdivision. The stream and wetland system are likely to capture polluted and contaminated water issuing from the horse riding academy, and the operation of the horse riding academy could adversely affect the well on the plaintiff's property that serves the plaintiff's home. The plaintiff is interested in the maintenance of the purity and cleanliness of the stream and wetland system that flow across her property.

The plaintiff claims that these allegations, taken as true for the purposes of the defendants' motions to dismiss, establish her classical aggrievement. We agree.

General Statutes §§ 22a-36 through 22a-45 constitute the Inland Wetlands and Watercourses Act (the act). General Statutes § 22a-37. Pursuant to General Statutes § 22a-43 (a), "any person aggrieved by any . . . order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by . . . [a] municipality" may appeal to the court. See footnote 4, supra.

"The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in

the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . . *Cannavo Enterprises, Inc.* v. *Burns,* 194 Conn. 43, 47, 478 A.2d 601 (1984); *Bakelaar* v. *West Haven,* 193 Conn. 59, 65, 475 A.2d 283 (1984). Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. *O'Leary* v. *McGuinness,* 140 Conn. 80, 83, 98 A.2d 660 (1953). *Hall* v. *Planning Commission,* 181 Conn. 442, 445, 435 A.2d 975 (1980). *State Medical Society* v. *Board of Examiners in Podiatry,* 203 Conn. 295, 299–300, 524 A.2d 636 (1987)." (Internal quotation marks omitted.) *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 530, 525 A.2d 940 (1987).

The parties' stipulation established a possibility that the stream and wetland system flowing from the subdivision through the plaintiff's land will be polluted by the horse riding academy. The parties also stipulated that this pollution could adversely affect her well. These facts are sufficient to establish at least a possibility that the plaintiff's interest in the purity of her well will be adversely affected by the horse riding academy. That adverse effect constitutes "a specific personal and legal interest in the subject matter of the [conservation commission's] decision" that was "specially and injuriously affected by the decision." Id.

The defendants argue that the plaintiff was not aggrieved because (1) pollution of the stream is a matter of general interest, rather than of personal interest to her, and (2) the source of the pollution of which the plaintiff complains is the riding academy on lot 5, "not any activity which the Michaels' license permits

them to conduct on lots 1-4 and 6-11 of the subdivision." Thus, the defendants argue, since the riding academy was not the subject of the license renewal, the decision of the conservation commission, as opposed to the action of the zoning commission in permitting the riding academy, did not adversely affect the plaintiff's interests. These arguments are without merit.

With respect to the defendants' first argument, we need not decide whether every downstream riparian owner is classically aggrieved by pollution of an upstream watercourse. It is sufficient here that the parties agreed that pollution could adversely affect the plaintiff's well.

The defendants' second argument rests on an unduly cramped notion of the subject matter of the decision of the conservation commission. General Statutes § 22a-42a (c) provides in pertinent part that "no regulated activity shall be conducted upon any inland wetland and watercourse without a permit."[10] Section

---

[10] General Statutes § 22a-42a (c) provides: "On and after the effective date of the municipal regulations promulgated pursuant to subsection (b) of this section, no regulated activity shall be conducted upon any inland wetland and watercourse without a permit. Any person proposing to conduct or cause to be conducted a regulated activity upon an inland wetland and watercourse shall file an application with the inland wetlands agency of the town or towns wherein the wetland in question is located. The application shall be in such form and contain such information as the inland wetlands agency may prescribe. The day of receipt of an application shall be the day of the next regularly scheduled meeting of such inland wetlands agency, immediately following the day of submission to such inland wetlands agency or its agent of such application, provided such meeting is no earlier than three business days after receipt, or thirty-five days after such submission, whichever is sooner. No later than sixty-five days after the receipt of such application, the inland wetlands agency may hold a public hearing on such application. Notice of the hearing shall be published at least twice at intervals of not less than two days, the first not more than fifteen days and not fewer than ten days, and the last not less than two days before the date set for the hearing in a newspaper having a general circulation in each town where the affected wetland and watercourse, or any part thereof, is located. All applications and maps and documents relating thereto

22a-42a (d) provides in pertinent part that "[t]he agency may suspend or revoke a permit if it finds . . . that the applicant has not complied with the conditions or limitations set forth in the permit or has exceeded the scope of the work as set forth in the application."[11]

shall be open for public inspection. At such hearing any person or persons may appear and be heard. The hearing shall be completed within forty-five days of its commencement. Action shall be taken on such application within thirty-five days after the completion of a public hearing or in the absence of a public hearing within sixty-five days from the date of receipt of such application. The applicant may consent to one or more extensions of the periods specified in this subsection for the holding of the hearing and for action on such application, provided the total extension of any such period shall not be for longer than the original period as specified in this subsection, or may withdraw such application. If the inland wetlands agency fails to act on any application within thirty-five days after the completion of a public hearing or in the absence of a public hearing within sixty-five days from the date of receipt of the application, or within any extension of any such period, the applicant may file such application with the commissioner of environmental protection who shall review and act on such application in accordance with this section. Any costs incurred by the commissioner in reviewing such application for such inland wetlands agency shall be paid by the municipality that established or authorized the agency. Any fees that would have been paid to such municipality if such application had not been filed with the commissioner shall be paid to the state. The failure of the inland wetlands agency or the commissioner to act within any time period specified in this subsection, or any extension thereof, shall not be deemed to constitute approval of the application."

[11] General Statutes § 22a-42a (d) provides: "In granting, denying or limiting any permit for a regulated activity the inland wetlands agency shall consider the factors set forth in section 22a-41, and such agency shall state upon the record the reason for its decision. In granting a permit the inland wetlands agency may grant the application as filed or grant it upon such terms, conditions, limitations or modifications of the regulated activity, designed to carry out the policy of sections 22a-36 to 22a-45, inclusive. No person shall conduct any regulated activity within an inland wetland or watercourse which requires zoning or subdivision approval without first having obtained a valid certificate of zoning or subdivision approval, special permit, special exception or variance or other documentation establishing that the proposal complies with the zoning or subdivision requirements adopted by the municipality pursuant to chapter 124 to 126, inclusive, or any special act. The agency may suspend or revoke a permit if it finds after giving notice to the permittee of the facts or conduct which warrant the intended action and after a hearing at which the permittee is given an opportunity to show compliance with the requirements for retention of the per-

The decision of the conservation commission not to revoke the license was a "decision or action made pursuant to" the act. General Statutes § 22a-43 (a). The plaintiff's claims of illegal conduct by the conservation commission—namely, renewing an expired license, failing prior to renewal to determine compliance with its conditions regarding lot 5, failing to require notice of a substantial change in conditions existing on lot 5, and failing to regulate activities on lot 5—at least on their face, fall within the statutory proscriptions of § 22a-42a (c) and (d), and within the municipal regulation cited by the plaintiff. See footnote 8, supra. The plaintiff's factual claims regarding the wetlands impact of the riding academy—namely, construction of storm water runoff and drainage facilities, alterations of drainage patterns, and impacts on the wetlands and groundwater resources of sites on and off the subdivision—are sufficient to constitute a claim of unlicensed regulated activity pursuant to § 22a-42a (c). Similarly, the allegations regarding the intervention of the horse riding academy and its claimed consequences are sufficient to constitute a claim of a significant change in the activities on the subdivision that required notification to and approval by the conservation commission.

The fact that the license was originally silent with respect to lot 5, save for the prohibition against further subdivision, does not mean, as the defendants suggest, that subsequent activity on the lot was ipso facto

mit, that the applicant has not complied with the conditions or limitations set forth in the permit or has exceeded the scope of the work as set forth in the application. The applicant shall be notified of the agency's decision by certified mail within fifteen days of the date of the decision and the agency shall cause notice of their order in issuance, denial, revocation or suspension of a permit to be published in a newspaper having a general circulation in the town wherein the wetland and watercourse lies. In any case in which such notice is not published within such fifteen-day period, the applicant may provide for the publication of such notice within ten days thereafter."

outside the subject matter of the conservation commission's decision not to revoke the license. Among the plaintiff's factual allegations that were stipulated as true for purposes of aggrievement was the allegation that the riding academy would impact on the wetlands and groundwater resources of the remaining ten lots of the subdivision, which were plainly within the Michaels' license. Thus, as the plaintiff argues, when her factual allegations were brought to the attention of the conservation commission upon the request for revocation of the license, the conservation commission could have required the Michaels to adopt additional pollution control measures on those lots for the purpose of safeguarding the stream and wetland system thereon, and could have thereby reduced the likelihood of the enhanced pollution that the plaintiff claimed to be a result of the activities on lot 5. We conclude, therefore, contrary to the defendants' position, that the activities on lot 5 were within the subject matter of the decision of the conservation commission.

The judgment is reversed, and the case is remanded with direction to deny the defendants' motions to dismiss and for further proceedings according to law.

In this opinion the other justices concurred.