[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a decision of the planning and zoning commission of the town of Burlington. The commission approved by a vote of three to two, the application of Woodland Notch Development Corporation for a special permit to construct a fifty-four unit condominium complex on a fourteen and one half acre parcel.
Woodland Notch applied to the Burlington TPZ on or about January 24, 1990. A special permit was required to construct multi-family dwellings in an R-15 zone. Notice was properly given and is not a subject of this appeal. The public hearing was commenced on April 25, 1990, and was continued until May 9, 1990. After open and contested sessions the Burlington TPZ closed the public hearing on May 9, 1990 [record (y) p. 42]. On June 13, 1990, the TPZ considered the application and decided to schedule a special meeting for June 18, 1990, at 6:00 p.m. to inspect the site [record (z)]. Notice of this "special meeting" was posted in town hall [record (aa)]. This "special meeting" was the subject of extensive testimony at the trial of this appeal and is explored below. On June 27, 1990. the TPZ voted to approve Woodland Notch's application. CT Page 1369
The planning and zoning commission of the town of Burlington acts pursuant to Connecticut General Statutes sections 8-2, 8-3c and 8-26e when considering an application for a special permit. Two of the plaintiffs, Alton S. Hastings and Brian P. Carros, own properties which are located within one hundred feet of the proposed development site. They appeal and are statutorily aggrieved pursuant to Connecticut General Statutes section 8-8.
Plaintiff Nancy T. Jordan filed a verified notice of intervention and appeals pursuant to Connecticut General Statutes section 22a-19 [record (b)]. Nancy T. Jordan is allowed to raise issues concerning the environment and the legality of the actions of the Burlington TPZ. Concerned Citizens of Sterling, Inc. v. Connecticut Siting Council,215 Conn. 474, 479 note 3 (1990); Connecticut Fund for the Environment, Inc. v. Stamford 192 Conn. 247, 251 note 3 (1984). The evidence concerning traffic and potential reduction in the value of Nancy T. Jordan's property which was presented at the trial of this appeal was insufficient to establish "classic" aggrievement. However, there was evidence at the trial from real estate agent Paul Kelley that the proposed development would involve the widening of George Washington Turnpike [9/24/91 trial transcript p. 11] While this evidence was not overwhelming, it was unchallenged by the defendants and supported by the record. The resulting loss of frontage would include a stone wall and a tree on Nancy T. Jordan's property which begins four hundred and fifty feet from the proposed development. This court finds that Nancy T. Jordan has proved "classic" aggrievement. She has "demonstrated a specific personal and legal interest in the subject matter or the decision, as distinguished from a general interest. . . ." Pomazi v. Conservation Commission, 220 Conn. 476, 482-483 (1991) citing Cannavo Enterprises, Inc. v. Burns, 194 Conn. 43, 47
(1984); Bakelaar v. West Haven, 193 Conn. 59, 65 (1984). "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." Pomazi v. Conservation Commission, supra, 483 citing O'Leary v. McGuinness, 140 Conn. 80, 83 (1953); Hall v. Planning Commission, 181 Conn. 442, 445 (1980); State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 299-300
(1987); Huck v. Inland Wetlands Watercourses Agency,203 Conn. 525, 530 (1987).
The plaintiffs brought this appeal with proper citation, service and return. This is not contested by the defendants. The trial of this appeal began on September 24, CT Page 1370 1991, and concluded on October 25, 1991. While the plaintiffs raise several issues, one is determinative. The scope of this court's review is very limited and is governed the Uniform Administrative Procedures Act, Connecticut General Statutes section 4-183. "The court's ultimate duty is only to decide whether, in the light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally or in abuse of [its] discretion." New Haven v. Freedom of Information Commission, 205 Conn. 767, 773 (1988) Citing Burnham v. Administrator, 184 Conn. 317, 322 (1981); Riley v. State Employees' Retirement Commission, 178 Conn. 438,441 (1979).
On May 9, 1990 the Burlington TPZ closed the public hearing on Woodland Notch Development Corporation's application for a special permit [record (y) p. 42]. On June 13, 1990, the TPZ decided to hold a "special meeting" at the site of the proposed development. That "walk in the woods" was held between approximately 6:00 p.m. and 6:50 p.m. on June 18, 1990. Although at least one of the plaintiffs' factual allegations is disputed, there is no dispute that members of the TPZ asked questions which the developer answered about three separate areas of concern. The minutes of that "special meeting" detail four topics [second supp. record (bb]:
1. determining approximate structure locations
 2. walking the wetland border in the northwest corner
 3. rechecking the end of the detention to the wetlands
 4. determining where George Washington Turnpike would be widened.
This "walk in the woods" was attended by four members of the TPZ. One left at 6:35 p.m. Also in attendance were the clerk of the TPZ, the town building inspector, a representative of Diversified Technologies Inc. and five residents. A reporter, presumably from a newspaper, was also at this "special meeting." No transcript exists of the event. The developer is Brian Hamernick, president and majority stockholder of Woodland Notch Development Inc. At the trial of this appeal Mr. Hamernick testified on direct examination that he attended the "special meeting" and answered questions concerning the proposed development. Most, but not all, of the questions Mr. Hamernick answered had been directed to the building inspector. All question CT Page 1371 concerned the site. He recalled questions primarily concerning boundaries. He confirmed the contents of the minutes of that meeting. Mr. Hamernick denied that any questions concerned information which was not already covered at the public hearings or on the maps. He testified that he made no promises to the TPZ [10/25/91 trial transcript pp. 32-33].
On cross-examination Mr. Hamernick testified that he did not "know of" the public being allowed to ask questions at the meeting [10/25 TT p. 34, 44]. He denied being asked questions about the street line of George Washington Turnpike [10/25 TT p. 37]. Mr. Hamernick testified that he spoke "throughout the entire meeting. . ." [10/25/91 TT p. 35]. Mr. Hamernick testified that he could" not recall exactly what questions were asked. . . ." [10/25/91 TT p. 41]. He did recall discussing boundaries but was not certain what he said to the TPZ members about the locations of buildings [10/25/91 TT p. 41-42]. Mr. Hamernick admitted that the commissioners could have asked him other questions [10/25/91 TT p. 44].
Mr. Gaetan Poulin, a commission member, testified that he asked Mr. Hamernick two questions. One question concerned the location of the second phase of the development. The town building inspector was not sure of the answer. The other question concerned taking down a high hill and also could not be answered by the town building inspector. Mr. Poulin did not recall whether or not any other questions were asked by the commissioners. Yet he did recall that the substance of the "special meeting" covered approximate structure locations, the northwest wetland border, the end of the detention pond and the location of the widening of the George Washington Turnpike [10/25/91 TT pp. 48-50]. Mr. Poulin, who voted against the development, answered in a reluctant manner when asked if he had relied on some of the information given by the developer at the site: "I would gather so." [10/25/91 TT pp. 51-51]. Mr. Poulin did recall that at the beginning of the "special meeting" when the map was unfolded on an automobile, asked Mr. Hamernick if the map was facing in the same direction as the people [10/25/91 TT p. 57].
Testimony was given by Mary Bencivengo that the enter line of the George Washington Turnpike was discussed by some commissioners and the developer. The center line had been discussed at the public hearing [10/25/91 TT pp. 63-64]. This testimony corroborates testimony given by Nancy T. Jordan [9/24/91 TT pp. 57-58]. Additionally, the minutes of the "special meeting" list the widening of the George CT Page 1372 Washington Turnpike as the fourth topic discussed [second supp. record (bb)]. This court finds the evidence persuasive that some commission members received information from the developer concerning at least:
 1. the center line of the George Washington Turnpike
2. the northwest boundaries of the site
3. the detention pond
4. the location of some structures
5. the removal of some or all of a hill.
The plaintiffs' appeal is sustained for the reason that the Burlington TPZ acted illegally. First, the TPZ received information after the close of the public hearing From an interested party. This is not a situation in which the TPZ received mere technical advice from neutral town staff. It is not even the situation in which a party's outside technical expert provided information which has some gloss of professional detachment. The procedure employed gave more than the appearance of impropriety. More than simply undermining the confidence of the public and the plaintiffs in the fairness of government, this action was improper. Kyser v. Zoning Board of Appeals, 155 Conn. 236
249-252 (1967); Norooz v. Inland Wetlands Agency, 26 Conn. App. 564, (1992).
The defendants argue strongly that no new information was presented at the "walk in the woods." Whether the information was "new" or not, it was additional information which was site-specific, three dimensional and demonstrative. Merely because the information related to topics which had been discussed at the public hearing with varying levels of specificity that does not mean it could be emphasized and expanded at the site fifty-four days after the beginning of the public hearing. It was information which even the developer admitted could not be provided by the town building inspector [10/25/91 TT p. 41]. This was confirmed by that official and a TPZ member [10/25/91 TT pp. 28, 56]. It was information which was considered by at least one member of the TPZ [10/25/91 TT p. 52]. No evidence was presented as to the effect the information had on other TPZ members. This court finds that the defendants have not sustained their burden of showing that these prohibited ex parte communications failed to prejudice the plaintiffs. Blaker v. Planning Zoning Commission, 212 Conn. 471, CT Page 1373 476-480 (1989); Martone v. Lensink, 207 Conn. 296,301 (1988); Henderson v. Department of Motor Vehicles,202 Conn. 453, 459 (1987).
This court finds that the plaintiffs' due process rights were violated. It is undisputed that the plaintiffs had no opportunity to cross-examine or rebut the evidence given to the TPZ by a party to the controversy. The plaintiffs were not allowed to ask any questions or offer any evidence. This is not a case in which an expert board received technical information. Here a citizen board took direct evidence from a party while denying any opportunity to respond. Pizzola v. Planning Zoning Commission,167 Conn. 202, 206-207 (1974); Norooz v. Inland Wetlands, supra, 569-570. This "special meeting" was so conducted that it violated the fundamental rules of natural justice. Milkus v. Zoning Board of Appeals, 154 Conn. 399, 406 (1967).
The decision of the Burlington Planning and Zoning Commission is reversed.
EDWARD J. MULLARKEY JUDGE OF THE SUPERIOR COURT