[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION STATEMENT OF APPEAL
The plaintiff, George Frank, appeals the decision of the defendant, Conservation Commission of the Town of Weston, which approved an application by another defendant in this action, Michael Tromba, for development of certain real property located at 9 Meadowbrook Lane, Weston.[1]
 BACKGROUND
CT Page 5804
Frank alleges that he is the owner of certain real property located at 112 Georgetown Road in Weston, Connecticut. (Appeal Complaint, ¶ 1, p. 1.), By application dated March 26, 1996, Tromba submitted an application for permission to conduct a regulated activity within an inland wetland or watercourse area in the Town of Weston. (Return of Record [ROR], exhibit 1.) Tromba sought the Commission's approval for construction of a three bedroom residence. (ROR, exhibit 1.) Tromba requested the Commission's approval of his plan with minimal modification in order to comply with the health code setback, the conservation setback, and the zoning setback. (ROR, exhibit 8.) Tromba stated that development of the lot involved extreme hardship because of the 1.3 acre lot, only one half acre is deemed to have non-wetland, buildable soil. (ROR, exhibit 8.)
On April 10, 1996, Tromba presented his application for construction to the Commission, and the Commission moved to receive the application. (ROR, exhibit 25.) On May 1, 1996, the Commission discussed Tromba's application, and at that meeting, the Commission suggested to Tromba that he should consider building a smaller house and that he should change the angle of the driveway. (ROR, exhibit 26.)
On June 5, 1996, Tromba presented his revised plan to the Commission, and the revised plan showed a modular house of 48 feet by 28 feet on a wider portion of the site and a modification of the driveway which proposed that the driveway come in at a 90 degree angle to the garage. At the meeting, a member of the Commission discussed a letter which the Commission received that day, drafted by Jay Fain Associates, an environmental consulting services firm, for an anonymous client who objected to Tromba's proposal. (ROR, exhibit 27.) A member of the Commission moved to approve Tromba's application. (ROR, exhibit 27.) Another member seconded the motion; however, the remaining members of the Commission voted against approving the application at that time. (ROR, exhibit 27.) The Commission then agreed to extend the application and to have a special meeting at Town Hall on Saturday, June 22, 1996. (ROR, exhibit 27.) Further, the Commission requested that Tromba present responses and objections to the letter from Jay Fain Associates at the June 22nd meeting. (ROR, exhibit 27.) The Commission also considered holding a public hearing on Tromba's application but it concluded that a public hearing was not necessary. (ROR, exhibit 27.)
On June 22, 1996, the Commission debated and approved CT Page 5805 Tromba's application subject to certain conditions. (ROR, exhibit 29.) Four members of the Commission voted in favor of approval, while one member abstained. (ROR, exhibit 29.) Frank now appeals from the Commission's approval of Tromba's application. (Appeal Complaint, ¶ 18, p. 4.)
 JURISDICTION
It is fundamental that appellate jurisdiction in administrative appeals is created only by statute and can be acquired and exercised only in the manner prescribed by statute.Munhall v. Inland Wetlands Commission, 221 Conn. 46, 50,602 A.2d 566 (1992).
 Aggrievement
Pleading and proof that the plaintiffs are aggrieved within the meaning of the statute is a prerequisite to the trial court's jurisdiction over the subject matter of the appeal. Munhall v.Inland Wetlands Commission, supra, 221 Conn. 50. A finding of aggrievement requires that property rights be adversely affected by an order, authorization or decision of the commissioner. Aggrievement is an issue of fact and credibility is for the trier of fact. Red Hill Coalition v. Conservation Commission,212 Conn. 710, 716, 563 A.2d 1339 (1989).
General Statutes 22a-36 through 22a-45 constitute the Inland Wetlands and Watercourses Act. Pomazi v. Conservation Commission,220 Conn. 476, 482, 600 A.2d 320 (1991). General Statutes §22a-43 provides in relevant part:
 "The commissioner or any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner, district or municipality or any person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any regulation, order, decision or action made pursuant to said sections may . . . appeal to the superior court for the judicial district where the land affected is located."
In the present case, Mr. Frank alleges that he is the owner of land which abuts the property that is the subject of the Commission's decision to allow Tromba's development. (Appeal CT Page 5806 Complaint, ¶ 6.) At a hearing on February 10, 1999, this court found that Frank was in fact the record owner of property abutting the proposed development at the time of the Commission's decision. Accordingly, this court concludes that Frank is aggrieved pursuant to General Statutes § 22a-43.
Timeliness and Service of Process
Section 22a-43 further provides, in part, that an appeal may be taken "within the time specified in subsection (b) of section8-8 from the publication of such regulation, or decision or action. . . . Notice of such appeal shall be served upon the inland wetlands agency and the commissioner."
General Statutes 8-8 (b) provides, in pertinent part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) further provides that service "shall be directed to a proper officer and shall be made by leaving a true and attested copy of the process with or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
Frank alleges that the Commission "approved Application Number 96-19 at the June 22, 1996 special meeting." (Appeal Complaint ¶ 8.) Frank further alleges that "[legal] notice of the approval of Application Number 96-19 was published in theNorwalk Hour on July 3, 1996." (Appeal Complaint ¶ 9.) On July 17, 1996, Frank commenced this appeal by service upon the Chairman of the Conservation Commission of the Town of Weston and on the Town Clerk of the Town of Weston.
The Conservation Commission of the Town of Weston submitted a clipping from a newspaper dated July 3, 1996. (ROR, exhibit 22.) The clipping sets forth the Commission's approval of Tromba's application for lot development.
This court concludes that July 3, 1998 was the date of publication of the decision, and, therefore, that this appeal was commenced in a timely fashion by service of process upon the proper parties.
 SCOPE OF REVIEW
CT Page 5807
In challenging an administrative agency action, the plaintiff has the burden of proof. The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo, the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. Samperi v. InlandWetlands Agency, 226 Conn. 579, 587, 628 A.2d 1286 (1993).
In reviewing an inland wetlands agency's decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. The evidence, however, to support any such reason must be substantial. The credibility of witnesses and the determination of factual issues, however, are matters within the province of the administrative agency. Samperi v. Inland Wetlands Agency,
supra, 587. This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. It imposes an important limitation on the power of the court to overturn a decision of an administrative agency and to provide a more restrictive standard of review than standards embodying review of weight of evidence or clearly erroneous action. The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. The reviewing court must take into account that there is contradictory evidence in the record, but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Samperi v. InlandWetlands Agency, supra, 226 Conn. 587-88.
A. Denial Without Prejudice
The first issue raised by the plaintiff on appeal is whether the Commission impermissibly failed to publish its June 5, 1996 denial of Tromba's application for lot development. Specifically, the precise issue raised by the plaintiff is whether the CT Page 5808 Commission is required to publish notice of the denial of an application where the Commission denied the application without prejudice.
In response, the defendants argue that the June 5, 1996 vote by the Commission did not result in a final decision by the Commission, and consequently, the agency did not have to publish the denial because it made the denial without prejudice. The defendants further argue that because the agency did not render a final decision at the June 5th meeting, the agency had the authority to gather further information and to change its mind about its decision prior to the publication of its final decision.
The defendants' arguments are persuasive. Section 10.1 of the Town of Weston Inland Wetlands and Watercourses Regulations (hereinafter regulations) provides:
 "The Agency may grant the application as filed; grant it upon such terms, conditions, limitations or modifications as may be necessary to carry out the purposes of these regulations; or deny it."
Further, regulation § 10.6 provides:
 "If the Agency denies the permit without prejudice, or if it grants a permit with terms, conditions, limitations or modifications, the application may attempt to modify the proposal to the Agency's satisfaction. The Agency shall determine whether the proposed modification requires the filing of a new application. The rejection of a modified or corrected application by the Agency shall be the equivalent to the denial of an application for the purposes of appeal."
The plaintiff argues that the entire administrative decision rendered by the Commission in the present case is void because the Commission failed to publish its June 5th "decision" denying Tromba's application without prejudice. In support of that contention, the plaintiff refers to a portion of the record which indicates that the denial without prejudice occurred subsequent to a vote denying the application. The defendants, on the other hand, argue that the agency made no final decision on June 5th, and therefore did not publish its denial without prejudice CT Page 5809 because publication would make the decision final.
The plaintiff's argument regarding the intent of the Commission is without merit. Prior to the motion for approval at the June 5th meeting, an unidentified speaker, who clearly was a Commission member, stated "it's a very difficult lot and I think . . . we have reason to question that the project might take a little further evaluation before we go forward with an approval. . . ." (ROR, exhibit 27, p. 12).[2]
After a 2-5 vote against approval, the Commission denied the application without prejudice and asked the applicant to return on June 22, 1996 with his responses to the questions raised. (ROR, exhibit 27, p. 14.) An agency can properly deny an application without prejudice "where the agency believes that the application is incomplete or there is some procedural defect, but it is likely that an application which meets the agency's regulations can obtain approval in the event of resubmission." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 21.7, p. 382. The record reflects that the Commission properly denied the application without prejudice and that there was no need to publish a decision to that effect. Here, the application was incomplete because the applicant was not given an opportunity to respond to an anonymous letter that first came to the attention of the applicant and the Commission at the June 5th meeting. As previously stated, the record reveals that the letter submitted by Jay Fain Associates on behalf of their anonymous client contained various objections to Tromba's application. For example, this letter contained arguments that: 1) the wetland line in Tromba's septic system site plan was incorrect; 2) the previous percolation tests conducted on this land in 1988 were invalid and the ground should be retested; 3) the applicant should be required to submit additional information under § 3.3 of the regulations; and 4) the applicant and the agency should consider feasible and prudent alternatives pursuant to § 9.3 of the regulations. (See ROR, exhibit 10.) Tromba's engineer, Steve Trinkaus, refuted these arguments. He argued that he conducted the soil tests back in 1988 when he was employed by the firm that conducted the tests and thus he affirmed that it was his belief that the tests were valid. (See ROR, exhibit 27, pp. 3-8.) It is clear that this application process was incomplete, and the Commission decided that more information was needed. (See ROR, exhibit 27, p 14.) Tom Failla stated that "this looks like it possibly comes down to the matter of opinion between one engineer and one soil scientist CT Page 5810 and the other, and I would just let you consider that before we make your final decision and that if there's an appeal, in the midst because of this and whatever decision you make that should be the responsibility of the complainant, if he doesn't agree with the Commission to continue, then he has a right to appeal. But it shouldn't block the decision to approve if all requirements have been met based on the presentation." (ROR, exhibit 27, pp. 12-13.) Moreover, the application was incomplete because the Commission planned to do another "walk" of the property. (ROR, exhibit 27.) The Commission also recognized that Tromba had followed procedures and was flexible in his approach to building on the lot. (See ROR, exhibit 27, p. 5.) Therefore, the record reflects that the Commission determined that the application was incomplete and that the Commission gave the applicant an opportunity to obtain approval by denying the application without prejudice.[3]
There is further support for the Commission's contention that their June 5th denial without prejudice did not constitute a final decision. The record reveals that the Commission's series of meetings held on March 26, April 10, June 5, and June 22, 1996, respectively, constituted one continuous meeting of the Commission on Tromba's application, and the Commission thereby rendered its final decision regarding that application on June 22, 1996. The view that this constituted but one hearing on the same application is supported by the case law. See Toffolon v.Zoning Board of Appeals, 155 Conn. 558, 565-66, 192 A.2d 40
(1967) (holding that "although the board met on three different dates, the three meetings constituted but one session of the board . . . The several votes were but steps taken toward a single, final decision."). Furthermore, regulation § 10.6[4]
specifically provides for a denial without prejudice whereby the applicant can re-attempt to gain the Agency's approval without having to file a new application. Accordingly, the court concludes that the Commission's denial without prejudice on June 5, 1996 was proper, and was not a final decision necessitating publication.
B. Significant Activity
The plaintiff next claims that the Commission failed to make a finding of significant activity. Specifically, the plaintiff argues that neither the Commission nor the applicant refuted the expert testimony of Jay Fain Associates, the plaintiff's environmental consulting services firm. (ROR, exhibit 10.) The CT Page 5811 plaintiff, however, offers no legal authority for his argument regarding this issue. Accordingly, the court declines to address this argument due to the plaintiff's failure to adequately brief the issue. See Willow Springs Condominium Ass'n., Inc. v. SeventhBRT Development Corp., 245 Conn. 1, 38, 717 A.2d 77 (1998) ("Issues that have not adequately been briefed may be deemed abandoned.")
C. The Hearings
The plaintiff next appeals on the grounds that the Commission inappropriately determined that the application did not involve significant activity and thereby failed to provide proper notice regarding the hearings on the application. The plaintiff raises two issues concerning the hearings which were held. The first issue is whether the Commission erred in finding that the application in the present case did not involve significant activity. The second issue raised by the plaintiff is determined by the answer to the first issue. Specifically, the plaintiff argues that because this case involved significant activity pursuant to the regulations, the Commission should have provided notice of a public hearing and the applicant should have mailed, by certified letter, notice of the public hearing to abutting landowners of record pursuant to regulations § 8.2[5] and 8.3,[6] respectively. The plaintiff argues that the Commission's decision in the present case is void because it did not hold hearings as required by the aforementioned regulations. In response, the defendants argue that the record supports the finding of no significant activity made by Commission. Regarding the second issue of service of notice, the defendants contend that because they found no significant activity public hearings were not required and a fortiori, no notice was required to be served in accordance with regulations §§ 8.2 and 8.3.
This court agrees. The Commission was correct in concluding that the application did not involve significant activity. Regulation § 8.1 provides: "A public hearing shall be held on all applications involving a significant activity. (See Sec. 2.1dd.) A public hearing may be held on applications which do not involve significant activities if the Agency determines it is in the public interest. A petition containing the signatures of twenty-five or more persons shall be considered as adequate public interest for the purpose of scheduling a public hearing. All applicants and maps and documents relating thereto shall be open for public inspection. Any person may appear and be heard at CT Page 5812 any public hearing."[7]
The Commission's finding of no significant activity in the present case is supported by substantial evidence in the record. Indeed, regulation § 8.1 requires a public hearing where there is a finding by the Commission of "significant activity" pursuant to § 2.1dd. See footnote 7. Nevertheless, a commission's determination that an "application for a wetlands permit did not involve `significant activity' may not be disturbed by a reviewing court if the record of the proceedings before the Commission reveals that there was substantial evidence to support its conclusion. And it is the responsibility of the commission to evaluate the credibility of witnesses and to resolve disputed factual issues not the reviewing court.Rockville Fish Game Club. Inc. v. Inland Wetlands Commission,231 Conn. 451, 459, 650 A.2d 545 (1994).
On April 10, 1996, the Commission received the application from Tromba and voted 6-0 in favor of considering the application. (See ROR, exhibit 25.) Here, the record indicates that the applicant, Tromba, recognized that the lot involved hardship with regard to the health code setback, the conservation setback, and the zoning setback. (See ROR, exhibit 8.) Nevertheless, the record also indicates that of the 1.3 acre lot, one half acre exists as non-wetland, buildable land. (See ROR, exhibit 8.) The record indicates that the Commission discussed the application at its regular meeting on May 1, 1996. The record further demonstrates that an extensive discussion took place concerning the application at that meeting. (See generally ROR, exhibits 9, 26.) At that meeting the applicant presented the testimony of Steve Trinkaus, a civil engineer who appeared on behalf of the applicant, Tromba. (See ROR, exhibit 26, pp. 3-15.) The Commission asked Trinkaus extensive questions regarding the wetlands on the property. (See ROR, exhibit 26, pp. 1-2.) Trinkaus commented that he did not encounter "any excessive water levels" during his "walk" of the property. (ROR, exhibit 26, p. 2) The Commission also expressed concern about water from Tromba's proposed septic system overflowing into the surrounding wetlands system. (See ROR, exhibit 26, p. 5.) Tromba responded: "There will be no degradation of the ground water and surface water with the system here." (ROR, exhibit 26, p. 6.)
On June 5, 1996, Tromba presented a revised plan for development of the lot to the Commission. (See ROR, exhibit 27.) The Commission considered, but declined to conduct public CT Page 5813 hearings on the matter. (ROR, exhibit 27.) Essentially, this matter amounts to a difference of opinion concerning the reports by two different experts hired by individuals with conflicting interests. (See ROR, exhibits 10, 12.) The plaintiff claims that the applicant's soil tests were defective, conversely, the applicant argues that the soil tests which he presented are valid. (See ROR, exhibits 10, 12.) However, the Commission had the authority to decide which witness was more credible and to make factual determinations concerning the issues presented.[8]
See Rockville Fish Game Club. Inc. v. Inland WetlandsCommission, supra, 231 Conn. 459. This court therefore concludes that the Commission's finding of no significant activity within the purview of regulation § 2.1dd is amply supported by the evidence in the record. Accordingly, court rejects the plaintiff's claim that the Commission's failure to conduct a public hearing on Tromba's application renders the Commission's approval of the application void. Furthermore, because the record demonstrates that the Commission properly concluded that Tromba's application did not involve significant activity, neither the Commission nor the applicant was required to comply with the notice provisions of regulations §§ 8.2 and 8.3. The court also rejects the plaintiff's claim that the proceedings were void due to the Commission's and the applicant's failure to comply with those notice requirements.
Based on the foregoing, the court hereby dismisses the plaintiff's appeal.
Melville, J.