[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. BACKGROUND AND PROCEDURAL HISTORY
On October 21, 1998 Varian applied to the Greenwich IWW for a wetlands permit to conduct regulated activities involving the construction of a single-family dwelling with a driveway, utility connections and wetlands plantings upon her single acre Normandy Lane property. (Return of Record [ROR], Items 1, 6.)
Finding that the proposed residence would have no significant impact or major effect upon the wetlands at its December 21, 1998 meeting, the IWW granted Varian's application #98-223 with seventeen special, and nine general, conditions. (Supplemental ROR, Item 1; ROR, Items 9, 10.) The special conditions included the implementation and development of a planting plan that would act as a natural buffer using native shrubs and trees in order to protect and enhance the adjacent wetlands. (ROR, Item 10, p. 3.[1])
In a certified letter dated January 5, 1999, the IWW sent notice of its decision to Varian along with IWW permit #98-175. (ROR, Item 10.) Varian signed for and received this certified notice on January 21, 1999. (ROR, Item 10, p. 8.) Notice of the IWW decision was published in the Greenwich Time newspaper on January 29, 1999. (Complaint, ¶ 5; Varian Answer, ¶ 5; IWW Answer, ¶ 5.)
On February 11, 1999, the plaintiffs commenced this appeal by leaving a true and attested copy of the citation, complaint and appeal in the hands of Carmella Budkins, Greenwich town clerk, and at the usual place of abode of Ray Heimbuch, the chairperson of the IWW. (Sheriff's Return.) In addition, on February 16, 1999, the office of the commissioner of environmental protection was served. (Sheriff's Return.)
On April 28, 1999, the court granted Varian's motion to be made a party defendant to this appeal and ordered the plaintiffs to amend their complaint and to state facts showing Varian's CT Page 2244 interest in this action. On May 7, 1999, the plaintiffs filed their amended complaint alleging that the IWW acted arbitrarily, illegally and in abuse of its discretion in granting Varian's application.
 II. JURISDICTION
It is fundamental that appellate jurisdiction in an administrative appeal exists only by statute and can be acquired and exercised only in the strict manner prescribed. Munhall v.Inland Wetlands Commission, 221 Conn. 46, 50, 602 A.2d 566
(1992).
 A. Aggrievement
General Statutes §§ 22a-36 through 22a-45 constitute the Inland Wetlands and Watercourses Act. Pomazi v. ConservationCommission, 220 Conn. 476, 482, 600 A.2d 320 (1991); General Statutes § 22a-37. General Statutes § 22a-43 (a) provides that "any person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any regulation, order, decision or action made pursuant to [§§ 22a-36 to 22a-45, inclusive] may, within the time specified in subsection (b) of section 8-8 from the publication of such regulation, order, decision or action, appeal to the superior court for the judicial district where the land affected is located. . . ."
"Pleading and proof that the plaintiffs are aggrieved within the meaning of the statute is a prerequisite to the trial court's jurisdiction over the subject matter of the appeal." Munhall v.Inland Wetlands Commission, supra, 221 Conn. 50. "Aggrievement is a question of fact for the trial court and the plaintiff has the burden of proving that fact." Water Pollution Control Authorityv. Keeney, 234 Conn. 488, 493, 662 A.2d 124 (1995). There are two categories of aggrievement — statutory and classical. Colev. Planning Zoning Commission, 30 Conn. App. 511, 514,620 A.2d 1324 (1993). In order to be statutorily aggrieved by the IWW's decision, the plaintiffs must plead and prove ownership of abutting land or land within ninety feet of the subject wetlands. See General Statutes § 22a-43 (a). In order to show classical aggrievement, the plaintiffs must satisfy a two-part test: first, they must demonstrate a specific personal and legal interest in the subject matter of the IWW decision; and second, they must show that the decision of the IWW caused injury to that specific CT Page 2245 personal and legal interest. See Munhall v. Inland WetlandsCommission, 221 Conn. 46, 51, 602 A.2d 566 (1992); Huck v. InlandWetlands Watercourses Agency, 203 Conn. 525, 530, 525 A.2d 940
(1987).
The plaintiffs allege that "Kenneth J. Hall and Estelle M. Hall are the owners of property immediately to the east of said property owned by Betsy Webster Varian." (Complaint, ¶ 2.) Varian's application to the IWW lists Kenneth Hall as an adjacent property owner. (ROR, Item 1.) The map of the Varian property also denotes the name "Hall" on the abutting property to the east. (ROR, Item 12.) Based upon the record, therefore, there exists sufficient proof that the Halls are statutorily aggrieved pursuant to General Statutes § 22a-43 (a) and have standing to bring this appeal.
The plaintiffs also allege that "Christoph Kull is the owner of the property immediately to the north of property on the southside of Normandy Lane, Riverside, Connecticut,[2] owned by Betsy Webster Varian for which application # 98-223 was filed with the defendant, Inland Wetlands Watercourses Agency." (Footnote added.) (Complaint, ¶ 1.) Although Kull's aggrievement has not been put in issue by the defendants, the court, despite a thorough search of the record, has found no support for the allegation that Kull owns property to the immediate north of Varian's property or that such property is within ninety feet of the wetlands involved in this appeal.
In order to have standing to bring an appeal from a decision of an inland wetlands agency, the appellant must prove aggrievement or must prove ownership or occupation of land that abuts any portion of the land or is within a radius of ninety feet of the wetland involved in the agency action or decision. See Hathawayv. Inland Wetlands Watercourse Commission, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 034332 (April 3, 1991, Fuller, J.); see also General Statutes § 22a-43 (a).
Accordingly, unless proof of aggrievement was submitted at the time of trial, Kull has done no more than allege that he owns property "immediately to the north of property on the southside of Normandy Lane. . . ." (Complaint, ¶ 1.) Kull's property is not shown on any of the maps contained in the record, nor is he listed as an adjacent property owner on Varian's IWW application and whether he is the owner of the property across the street CT Page 2246 from the wetlands involved in this appeal is not ascertainable from the record. Further, Kull fails to allege that he is classically aggrieved. In the absence of proof (in the record or at trial) of Kull's aggrievement, the court holds that Kull lacks standing to bring this appeal.
 B. Timeliness of the Appeal and Service of Process
General Statutes § 22a-43 (a) provides that an inland wetlands appeal must be commenced "within the time specified in subsection (b) of section 8-8 from the publication of such regulation, order, decision or action. . . . Notice of such appeal shall be served upon the inland wetlands agency and the commissioner." Further, "[t]he commissioner may appear as a party to any action brought by any other person within thirty days from the date such appeal is returned to the court." (Internal quotation marks omitted.) General Statutes § 22a-43 (a). General Statutes § 8-8 (b) provides that an appeal must be commenced within fifteen days of the publication of notice of the commission's decision.
The IWW published notice of its decision in the Greenwich Time
newspaper on January 29, 1999. (Complaint, ¶ 5; Varian Answer, ¶ 5; IWW Answer, ¶ 5.) The plaintiffs commenced their appeal by service of process to the town clerk and the chairperson of the IWW on February 11, 1999, and to the commissioner at the department of environmental protection on February 16, 1999. (Sheriff's Return.) Although service upon the commissioner was rendered some eighteen days after the notice publication, this does not impact the court's subject matter jurisdiction where the IWW service was timely. See Demar v. OpenSpace Conservation Commission, 211 Conn. 416, 430,559 A.2d 1103 (1989) (failure to timely serve the commissioner does not implicate the court's subject matter jurisdiction). Accordingly, the court has subject matter jurisdiction to hear this appeal.
 III. JUDICIAL REVIEW
"[T]he [inland wetlands] statutory scheme [was] designed to give local agencies broad discretion to oversee wetland activities." Rockville Fish Game Club v. Inland WetlandsCommission, 231 Conn. 451, 461, 650 A.2d 545 (1994). "Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions. . . . This cautionary CT Page 2247 advice is especially apt whenever the court is reviewing a decision of a local commission composed of laypersons." (Citations omitted; internal quotation marks omitted.) Samperi v.Inland Wetlands Agency, 226 Conn. 579, 596, 628 A.2d 1286 (1993)
"In reviewing an inland wetlands agency decision . . . the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial." (Internal quotation marks omitted.) Samperi v. Inland Wetlands Agency, supra,226 Conn. 587-88. In applying the substantial evidence standard, it has been held that it is improper for the reviewing court to reverse an agency decision simply because the agency failed to state its reasons upon the record. Id., 588. "The reviewing court must search the records of the hearings before that commission to determine if there is an adequate basis for its decision." Id., 588-89.
"[T]he burden of showing that the agency has acted improperly rests upon the one who asserts it." (Internal quotation marks omitted.) Connecticut Resource Recovery Authority v. Planning Zoning, 225 Conn. 731, 751, 626 A.2d 705 (1993). "[T]he plaintiff must establish that substantial evidence does not exist in the record to support the agency's decision. . . . The reviewing court may grant relief from the agency's decision only where the decision is arbitrary, illegal or not reasonably supported by the evidence." (Citations omitted; internal quotation marks omitted.)Keiser v. Conservation Commission, 41 Conn. App. 39, 41,674 A.2d 439 (1996).
The IWW granted Varian's application based upon the evidence it had before it, including, but not limited to: the application, the field investigations by IWW staff and members, information on file, discussions with the applicant's representatives, the Agency staff report, a soils report and the December 21st public meeting. (ROR, Item 9.) The IWW made certain findings based upon this evidence, including the findings that "[t]here are no feasible or prudent alternatives that would further reduce or avoid any impact on the wetland or watercourse [and] [t]he construction activities associated with the single family residence with driveway, utility connections and installation of wetland plantings are regulated activities not involving a significant impact or major effect on the inland wetland and watercourse areas as defined in Section 2 of the Greenwich Inland CT Page 2248 Wetland and Watercourse Regulations." (ROR, Item 9.)
The plaintiffs, in filing their amended complaint on May 5, 1999, allege that the IWW acted arbitrarily, illegally and in abuse of its discretion in granting Varian's application. In support of their appeal, the plaintiffs argue that: (a) by relying upon insufficient evidence, the IWW failed to provide proper reasons for its decision; and (b) the IWW deviated from the minimum buffer and setback requirements contained in Appendix A of its regulations.[3]
 A. Whether the IWW Relied Upon Insufficient Evidence
The plaintiffs appeal on the ground that, by relying upon insufficient evidence, the IWW failed to provide proper reasons for its decision. The plaintiffs argue that "[t]he `reasons' given by the Agency to support its finding that there was no significant impact on adjacent wetlands and that there was no reasonable and prudent alternative to the activity are not sufficient evidence to support the Agency's decision." (Plaintiffs' Brief, p. 2.) Specifically, the plaintiffs argue that the evidence relied upon by the IWW, including Varian's application, IWW field investigations, file information, various discussions with representatives of Varian, the IWW staff report, a soils report, and the December 21st hearing, is insufficient and, for the most part, is not evidence at all. (Plaintiffs' Brief, pp. 2-3.)
The defendants respond that "[t]he Agency's staff provided it with substantial evidence that the proposed activities would have no adverse effect on the adjacent wetlands . . . ." (Defendants' Brief, p. 6.) Specifically, they argue that "[t]he record in this matter overwhelmingly supports the Agency's determination that the proposed activity would have no significant impact or major effect on inland wetlands, the express reason stated by the Agency in unanimously granting Ms. Varian's Application." (Defendants' Brief, p. 6.)
The evidence before the IWW included such professional reports as an IWW field investigation report, an IWW staff report, and a professional soils report. Such reports may provide useful information and evidence to the IWW in making its decisions. In addition, in the process of making a decision, a wetlands agency may rely upon its own knowledge and expertise along with that of its staff. See Rockwell Fish Game Club v. Inland WetlandsCT Page 2249Commission, supra, 231 Conn. 458; Huck v. Inland Wetlands Watercourse Agency, supra 203 Conn. 542. In reviewing the record, the court holds that it contains substantial evidence in support of the IWW's decision to grant Varian's application.
The IWW had before it a soil investigation report prepared by Otto R. Theall, professional soil scientist, that reported on the soil content and differentiated the wetlands soil from the non-wetlands soil. (ROR, Item 3.) The IWW also had before it a field investigation report prepared by Ed Jones, IWW investigator, that reported on the overall land at the property. (ROR, Item 5.) The report stated that the entire lot is currently mixed hardwood woodland. It also described the wetlands drainage and gave the investigator's overall assessment of the condition of the land. (ROR, Item 5.) Although the first two reports contained no written assessment as to the appropriateness of the proposed application, the staff report, also prepared by Ed Jones, provided a comprehensive outline of the proposed activity, describing the wetlands and the wetland vegetation on the property, and giving extensive professional comments and recommendations. (ROR, Item 6.) The report stated that no area of wetland would be lost, nor any created by the proposed activity. Id. Based upon his professional assessment and the other reports, Jones recommended issuing Varian a permit with several special, as well as standard, conditions. Id.
Relying upon the above professional reports and recommendations, the IWW could reasonably have come to the conclusion that the proposed activity would have little or no adverse impact upon the wetlands involved. "In reviewing an [IWW] decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given." (Internal quotation marks omitted.) Samperi v. InlandWetlands Agency, supra, 226 Conn. 587-88.
The plaintiffs, here, have failed to meet their burden of proof that substantial evidence does not exist in the record to support the IWW's decision. See Keiser v. Conservation Commission, supra,41 Conn. App. 41.
 B. Whether the IWW Violated its Regulations by Deviating from the Minimum Buffer and Setback Requirement
The plaintiffs also appeal on the ground that the IWW violated CT Page 2250 its regulations by deviating from the minimum buffer and setback requirements delineated in Appendix A of the regulations. The plaintiffs argue that "[t]he minimum undisturbed buffer for any activity, regardless of kind of activity or type of wetland, is 15 feet. Yet the decision of the Agency states, `The buffer will be 10 to 35 feet wide.' . . . There is no provision anywhere that allows for a decrease of the width of the `minimum undisturbed buffer.'" (Plaintiffs' Brief, pp. 5-6.)
The defendants respond that "after exhaustive review and investigation [the staff] specifically found that Ms. Varian's proposed buffer zone would protect and enhance the adjacent wetlands. . . . As the plaintiffs acknowledge in their brief, the Agency is expressly empowered to deviate from the recommended setbacks contained in its guidelines." (Defendants' Brief, p. 7.[4])
Appendix A of the IWW regulations, entitled "Guidelines forMinimum Setbacks Without Special Analysis," provides a chart of regulated activities with the minimum setback and buffer requirements for each particular type of watershed or waterbody[5] in a wetland or watercourse. Note 1 of Appendix A grants to the IWW the power to deviate from its guidelines by providing that "[i]n evaluating any deviation from these guidelines, the Agency will take into consideration the viability and importance of the wetland or watercourse as well as the effectiveness of the buffer." The question to be resolved, here, is whether this note grants the IWW the discretion to deviate from the stated minimum buffer area as well as the setback area.
Although the plaintiffs agree that the IWW is empowered to deviate from its setback requirements, the plaintiffs do not agree that the IWW is empowered to deviate from its minimum undisturbed buffer guidelines. The plaintiffs contend that the IWW must assess the effectiveness of the required minimum buffer before deviating from its setback guidelines, and it is only where the minimum buffer is effective that a setback deviation is permissible.
The defendants argue that "the staff, after exhaustive review and investigation, specifically found that Ms. Varian's proposed buffer zone would protect and enhance the adjacent wetlands." (Defendants' Brief, p. 7.) Further, they argue, that the IWW, "reasonably concluded that the proposed activities, although deviating from the recommended guidelines, would nonetheless have CT Page 2251 no significant impact on the surrounding wetlands and also provided for an effective buffer zone." Id., 8.
"The wetlands statute delegates the power to regulate wetlands and watercourses within its territorial limits to the municipality. It is well settled that a commission empowered to regulate the wetlands within its jurisdiction is afforded discretion in carrying out its duties." Consolini v. InlandWetlands Commission, 29 Conn. App. 12, 15, 612 A.2d 803 (1992). A local board or commission is in the most advantageous position to apply and interpret its own regulations and, as long as honest judgment is used, the court must not disturb the local agency's decision. See New London v. Zoning Board of Appeals,29 Conn. App. 402, 405, 615 A.2d 1054, cert. denied, 224 Conn. 922,618 A.2d 528 (1992).
It was not unreasonable for the IWW to interpret the regulations in such a way that they allowed a deviation from the minimum buffer requirements on condition that such a deviation still provided an adequate buffer. The IWW reasonably could have interpreted the regulations to find that it had discretion in terms of both the setback requirements and the buffer requirements. "Because public officers, acting in their official capacities, are presumed, until the contrary appears, to have acted legally and properly, . . . the burden on such a claim rests upon the person asserting it." (Citations omitted.) Huck v.Inland Wetlands Watercourses Agency, supra, 203 Conn. 537.
Accordingly, the plaintiffs have not met their burden of proof that the IWW violated its regulations by allowing Varian to deviate from the minimum buffer guidelines. There is sufficient evidence contained in the record to support the IWW decision granting Varian's application. The plaintiffs have provided no proof that the Greenwich IWW acted illegally, arbitrarily or in abuse of its discretion. Having failed to meet their burden of proof, the plaintiffs' appeal is dismissed.
HICKEY, J.