[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION REGARDING MOTION TO DISMISS
The defendant-appellee, Target Corporation, has moved to dismiss the appeal of the plaintiff-appellant, 1055 Stamford Associates Limited Partnership ("plaintiff and/or 1055") from the decision of the Zoning Board of the City of Stamford ("Zoning Board) to approve two Special Exceptions in connection with Target's proposed construction of a retail building.
 FACTS
1055 Stamford Associates Limited Partnership is the lessee of property known as the DeLima property located at 1055 Washington Boulevard, Stamford, Connecticut. 1055 Stamford Associates Limited Partnership is not and has never been the owner of property located at 1055 Washington Boulevard, Stamford, Connecticut.
Pursuant to Paragraph 5.4 of the lease between 1055 and the owners of the property, "any and all buildings, structures, alterations, improvements, and building service equipment placed upon the [DeLima property] by [1055], as well as all fixtures attached to or used in connection with the [DeLima property], shall immediately upon erectionand installation become property of the Landlord. (Emphasis added). Accordingly, the building located at 1055 Washington Boulevard is not owned by 1055 Stamford Associates Limited Partnership.
Target Corporation, as a contract purchaser of the property to the north of the DeLima property, submitted a Special Exception Application pursuant to Section 3A, Definition 39.2 of the Zoning Regulations authorizing a waiver of the requirement of 10 percent usable open space at grade, which application was numbered "201-34 Target Corporation".
In addition to application 201-34, Target Corporation, submitted an
CT Page 13935
additional application, designated as Application "201-35 Target Corporation" requesting approval of a Special Exception pursuant to Appendix B, Footnote 7, to permit a rear yard of varying dimensions between 6.9 feet and 9.0 feet, in lieu of 20 feet. In connection with its submission of its two Applications for two separate Special Exceptions, Target Corporation proposed that a six-story structure, would be constructed on the site. Excluding the two requested Special Exceptions, the presentation by Target fully complied with all other applicable zoning requirements of the Stamford Zoning Regulations.
The Target project, as presented to the Zoning Board, did not include development of the entire Target site. The Target project left a portion of the site, approximately 20, 000 square feet, in an undeveloped condition. The ("out parcel") portion of the Target site which was not proposed to be developed is located at the northwesterly corner of the site on the corner of Washington Boulevard and Broad Street, both public streets in the City of Stamford.
The Target site is located in the CCN zone. In the CCN zone in Stamford, there are no side yard setbacks, which means that a building in the CCN zone can be built right to the side lot property line. The Zoning Regulations of the City of Stamford have always permitted the construction of a commercial building on what is now known as the Target site with no set back requirements on the southerly border of the site which abuts the leased property of the plaintiff.[1]
On January 24, 2002, the Zoning Board granted Applications 201-34 and 201-35. The Zoning Board made the following findings:
"3. The Building and Site Plan [for the Target project] are consistent with those general standards and criteria of § 9.3 of the Zoning Regulations which are relevant to the Special Exception Application under consideration, in that:
(a) the public convenience and welfare is advanced by the enhancement of the public sidewalk and ground floor retailing environment;
(b) the location and design of the building will produce a vibrant, dense, pedestrian-friendly activity within the CBD in general;
(c) the proposed location and the nature of the site, including the height, coverage, bulk and arrangement of the structure is in conformance with permitted zoning and is appropriate with respect to other structures and uses adjoining the site;
CT Page 13936
(d) the nature and intensity of the proposed uses is consistent with the goals and objectives of the Master Plan, the CCN district and with the general purpose and intent of the Zoning Regulations;
(e) the proposed site development creates no objectionable noise, fumes, vibrations or light;
(f) the resultant traffic patterns are acceptable, after implementation of recommended traffic improvements, to be completed at the sole expense of the applicant, prior to occupancy of the site;
(g) there is adequate off street parking, and truck loading and proposed driveways will not cause safety hazards or traffic nuisances;
(h) the surrounding area is developed in a similar fashion to that proposed by the applicant and the nature of the proposed use will not interfere with the present or future development of surrounding properties."
In addition the Zoning Board made the following findings:
"4. The building and Site Plan are consistent with those general standards and criteria of § 7.2 of the Zoning Regulations which are relevant to the Special Exception application under consideration, in that:
(a) the proposed retail building separates parking, loading and pedestrian circulation to create a safe, adequate and convenient system of traffic circulation;
(b) parking, loading and vehicle drop-off areas comply with applicable zoning standards;
(c) the site development plan is designated to fully integrate with the Urban Redevelopment Commission plan for the southerly portion of the block and creates a safe, cohesive traffic pattern;
(d) with traffic improvements recommended by the applicant, the area street system has adequate capacity to service requirements of the site without causing undue congestion or hazardous conditions;
(e) loading, refuse, utility and storage facilities are appropriately shielded from public view;
(f) adequate site landscaping and street scape improvements are
CT Page 13937
provided around the entire frontage of the property;
(g) the proposed landscaping and pedestrian improvements of the so-called "Future Development Area" is satisfactory;
(h) suitable measures are proposed to control soil erosion, sedimentation and fugitive dust during construction;
(i) there are no significant natural features or trees on the site and public utilities, drainage facilities and other public infrastructure are deemed adequate to service the requirements of the site;
(j) the proposed building has been designated to conform to current building and fire codes;
(k) the arrangement, location, apparent bulk, architectural features, materials and textures of the proposed building are compatible and complimentary with the character and design of the vicinity;
(l) established patterns of side and rear yard areas are appropriate for the vicinity;
(m) the proposed use will produce no dust, smoke, gas fumes, form hazard, harmful discharges or traffic hazards."
The applications did not propose development of the undeveloped out parcel. Under the express terms of the decisions of the Zoning Board on Applications 201-34 and 201-35, the applicant was not permitted to build any structures on the out parcel and was only permitted to landscape the out parcel as shown on the plans. Specifically, paragraph 15 of the approval of the Special Exceptions provided:
Improvements to the so called "Future Development Area" shall be limited to the landscaping and pedestrian improvements shown on SP-1 (as modified by condition ((a) above) until such time as the applicant submits an application to amend the Special Exception and submits site and architectural plans for Zoning Board approval showing proposed improvements for said area. In approving any future application for improvements of this area, the Board shall be guided by the urban design principles of the CBD Addendum of the Master Plan, by the general standards of § 7/2 and § 19.3, and by the overall quality of the design of any such proposed improvements, and shall take into consideration the setback, arrangement, architectural design, and materials of other structures and open space areas on adjacent and surrounding properties.
CT Page 13938
During the evidentiary hearing, the plaintiff acknowledged that it is not adversely effected by the decision of the Zoning Board to grant Application 201-35 [rear setback]. The plaintiff's appraiser acknowledged that the decision of the Zoning Board in Application 201-35 did not cause an adverse impact upon 1055 Stamford Associates' interests. Plaintiffs appraiser under cross examination with regard to the open space waiver [201-34] also testified that if the Target building itself had an adverse impact upon 1055 Washington Boulevard, there would be no additional or incremental adverse impact if the out parcel was left in an undeveloped, landscaped state.
Accordingly, there is no adverse impact to 1055 Washington Boulevard as a result of the Zoning Board's decision to require the out parcel to be landscaped and otherwise undeveloped. Moreover, the plaintiff is not adversely affected by decisions of the Zoning Board because as a result of said decision the undeveloped corner parcel will remain undeveloped unless and until a new application is made to develop the undeveloped corner parcel.
The plaintiff filed a single appeal addressing the two decisions on two applications submitted to the Zoning Board.
DISCUSSION OF LAW
"The standard of review of a Motion to Dismiss on grounds of lack of jurisdiction is well established. The motion must be granted if, even when viewed in the light most favorable to the plaintiff, the allegations of the complaint fail to state a claim within the Court's subject matter jurisdiction." Hutchings v. State Traffic Commission, 2000 WL 1475710
(Conn.Super., Hodgson, J. Sept. 22, 2000) citing approvingly, LawrenceBrunoli, Inc. v. Town of Brandford, 247 Conn. 407 410-11 (1999) andSavage v. Aronson, 214 Conn. 256, 264 (1990).
"It is also well established that there is no right of appeal from a decision of an administrative agency except as created by statute."Hutchings v. State Traffic Commission, Supra, 2000 WL 1475710. "It is fundamental that appellate jurisdiction in administrative appeals is created only by statute and can be acquired and exercised only in the manner prescribed by statute." Munhall v. Inland Wetlands Commission,221 Conn. 46, 50 (1992); Chestnut Realty, Inc. v. Commission on HumanRights and Opportunities, 201 Conn. 350, 356 (1986).
Connecticut Gen. Stat. § 8-8 provides that any person aggrieved by any decision of a board may take an appeal to the Superior Court. C.G.S.
CT Page 13939
§ 8-8 (b).
An aggrieved person includes any person owning land that abuts or is within a radius of one hundred feed of any portion of the land involved in the decision of the board. C.G.S. § 8-8 (a). The type of aggrievement described in Section 8-8 is known as "statutory aggrievement". Nick v. Planning Zoning Commission, 6 Conn. App. 110,112 (1986).
In addition to those statutorily aggrieved, others may be found to be aggrieved if they "successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is a concern of all members of the community as a whole. [In addition], the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision". Walls v.Planning and Zoning Commission, 176 Conn. 475, 477-78 (1979). As distinguished from "statutory aggrievement", the type of aggrievement described in the Walls decision has been referred to as "classical aggrievement". Aquarium, Inc. v. Gill, 175 Conn. 483, 491-93 (1978).
Plaintiff claims that it is both statutorily aggrieved and classically aggrieved.
 STATUTORY AGGRIEVEMENT
There do not appear to be any appellate cases that specifically address whether a leasehold interest constitutes "any person owning property . . ." as set forth in Conn. Gen. Stat. § 8-8. However, Smith v. Planningand Zoning Board, 203 Conn. 317 (1987), provides some guidance regarding this issue.[2] In Smith, the court addressed whether a life tenancy constituted "owning" property as set forth in Conn. Gen. Stat. 8-8
thereby entitling the life tenant to an automatic right of appeal. The court held that the plaintiff had standing as an owner based on the interest that plaintiff had as a life tenant, which the court found was equivalent to a fee interest. The court focused on the life tenant's ability to transfer the property during the tenancy to any third party and the life tenant's complete control over use of the premises.
In this case, the plaintiff has a leasehold interest. A leasehold interest entitles a lessee to possessory rights. A lease is a contract under which exclusive possessory interest in property is conveyed. CleanCorp. v. Foston, 33 Conn. App. 197 (1993). The lease in this case makes clear that the fee remained with the landlord and not the lessee. Section 15.6 of the lease specifically provides as follows: "The fee title of
CT Page 13940
Landlord and the Leasehold Estate of the Tenant shall at all times be separate and apart. . . ." Additionally, a thorough review of the lease reveals that the lessee does not have complete control of the premises (i.e. approval of building plan required by the landlord) and the lessee cannot sell the lease without certain approvals by the landlord.
Based on the lack of authority that equates a leasehold interest with "owning land" for purposes of automatic statutory aggrievement, and the specific language of the lease which demonstrates that the plaintiff does not have a fee interest in the property, or the equivalent of a fee interest, this court finds that the plaintiff does not own land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the Board. Accordingly, plaintiff is not statutorily aggrieved.
 CLASSICAL AGGRIEVEMENT
In the absence of statutory aggrievement, the plaintiff must prove classical aggrievement. Munhall v. Inland Wetland Commission, 221 Conn. 46
(1992); Conn. Gen. Stat. § 8-8 (j). Compliance with the classical aggrievement requirement encompasses a two fold test. "First, the party claiming aggrievement must demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must establish that this specific personal and legal interest has been specially and injuriously affected by the decision." Hall v. Planning Commission,181 Conn. 442, 444 (1980). Aggrievement is established if there is a possibility that some legally protected interest has been adversely affected. Pomazi v. Conservation Commission of Redding, 220 Conn. 476,483 (1991).
"[The Connecticut Supreme Court] has not set forth a precise standard that defines the required interest of a non-owner must possess in order to become an aggrieved party under § 8-8 and 8-9. Rather [the court] has held that the extent to which a party with an interest in the property other than that of an owner is aggrieved depends upon the circumstances of each case, because the concept of standing is a practical and functional one designed to ensure that only those parties with a substantial and legitimate interest can appeal an order."Primerica v. Planning and Zoning Commission of the Town of Greenwich,211 Conn. 85, 92-93 (1989). For purposes of this decision, the court assumes that the plaintiff has a specific and personal legal interest in the subject matter of the decision.
CT Page 13941
The second prong of the classical aggrievement two prong test requires a showing of an adverse affect upon the claimant's specific, personal and legal interest as a result of the contested decision. In analyzing whether the plaintiff has proven the second prong of classical aggrievement, it is important to set out what this appeal is about and what it is not about. It is an appeal of the approval of two Special Exceptions that are very narrow. It is not an appeal of the approval of the Target store. Target did not need zoning approval to build the store since it was already in compliance with the zoning regulations. Accordingly, the proper analysis is whether there is a possibility of an adverse effect upon the plaintiffs interest as a result of the approval of the two Special Exceptions.
The plaintiff has failed to meet its burden because there is no evidence that its interest has been adversely affected by the decisions of the Zoning Board. Mr. Leary, the expert appraiser for the plaintiff, acknowledged that the decision of the Zoning Board relating to the rear yard set back did not adversely affect the plaintiffs interest. With regard to the open space waiver approved by the Zoning Board, Mr. Leary further testified that it did not add any incremental loss to the plaintiff over the losses resulting from the Target store in general. Thus, the plaintiff, through its expert, admitted that it did not suffer any loss as a result of the approval of the two Special Exceptions by the Zoning Board. Accordingly, plaintiff has failed to sustain its burden of proving classical aggrievement.[3]
For all the foregoing reasons, plaintiff-appellant has failed to establish statutory or classical aggrievement and therefore the motion to dismiss for lack of subject matter jurisdiction is granted.
 ___________________ CHASE T. ROGERS SUPERIOR COURT JUDGE